IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| KAREN WEBB,<br><br>   Plaintiff,<br><br>  v.<br><br>FULTON COUNTY; and the FULTON COUNTY CLERK OF SUPERIOR AND MAGISTRATE COURTS;<br><br>   Defendants. | Case No. 1:24-CV-02973-SEG-CCB<br><br>**JURY TRIAL DEMANDED** |

## FIRST AMENDED COMPLAINT

Plaintiff, Karen Webb ("Ms. Webb" or "Plaintiff"), by and through her undersigned counsel, hereby avers as follows:

### INTRODUCTION

1. Ms. Webb brings this action against her employer for sexual harassment, discrimination, and retaliation, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000-e, *et seq.* ("Title VII").

2. In short, Ms. Webb was subjected to severe sexual harassment during her employment by a Chief Deputy Clerk of the Fulton County Clerk's office, including

1

being sexually assaulted at work. Instead of protecting Ms. Webb and other female employees, Defendants protected and enabled a sexual predator.

## THE PARTIES

3. Plaintiff Karen Webb ("Plaintiff" or "Ms. Webb") is an adult woman and resident of Georgia.

4. Defendant Fulton County is, and at all relevant times was, a body politic which can sue and be sued and is subject to the venue and jurisdiction of this Court. During her employment relevant to this matter, Ms. Webb was paid by Fulton County and, upon information and belief, subject to employment policies and procedures of Fulton County (including with respect to the sexual harassment, discrimination, and retaliation she experienced). Fulton County acted by and through its executive officers, directors, managers, and other agents.

5. Defendant Fulton County Clerk of Superior and Magistrate Courts ("the Fulton County Clerk" or "Clerk Alexander") is, and at all relevant times was, Ché Alexander, an elected official who can sue and be sued and is subject to the venue and jurisdiction of this Court. The Fulton County Clerk acted by and through her executive officers, directors, managers, and other agents. In connection with this matter, Defendants asserted in their position statement to the Equal Employment Opportunity Commission ("EEOC") that "Ms. Webb was employed by the Clerk of Superior and Magistrate Courts."

2

6. In response to Ms. Webb's EEOC Charge of Discrimination in connection with this matter, Defendants Fulton County and the Fulton County Clerk filed a joint position statement, represented by the same counsel (the Office of the Fulton County Attorney). With respect to Ms. Webb's complaints and reports of sexual harassment described herein, Ms. Webb at times dealt with human resources personnel of Fulton County as well as human resources personnel of the Fulton County Clerk.

7. At all times relevant herein, Defendants Fulton County and the Fulton County Clerk were the agents, employees, managing agents, supervisors, co-conspirators, joint employers, alter ego, and/or joint venturers of the respective other Defendant, and in doing the acts or omissions alleged herein, were acting at least in part within the course and scope of said agency, employment, conspiracy, joint employment, alter ego status, and/or joint venture and with the permission, consent, and/or ratification of the other Defendant. Defendants Fulton County and the Fulton County Clerk are collectively referred to as "Defendants."

8. Whenever and wherever reference is made herein of any act by a Defendant or Defendants, such allegations and references shall also be deemed to mean the acts and failures to act of each Defendant acting individually, jointly, and severally.

9. Whenever and wherever reference is made to individuals who are not named as Plaintiff or Defendants in this complaint but were agents, servants, employees

and/or supervisors of Defendants, such individuals at all relevant times acted on behalf of Defendants.

## JURISDICTION AND VENUE

10. This action arises under federal statutes, including Title VII. The United States District Court for the Northern District of Georgia has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims brought herein constitute a federal question under the laws of the United States.

11. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because all Defendants reside in the state of Georgia, some or all of the Defendants reside in this district, and a substantial part of the events or omissions giving rise to Ms. Webb's claims occurred in this district.

## ADMINISTRATIVE EXHAUSTION

12. Ms. Webb properly exhausted her administrative remedies by timely filing a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and by filing the instant lawsuit within ninety (90) days of receiving a notice of right to sue letter from the EEOC.

13. Ms. Webb has satisfied all private, administrative, and judicial prerequisites to the institution of this action.

## FACTS

14. In or about March of 2022, Ms. Webb was hired to work in the Fulton County Clerk's office. Throughout her employment she has held the position of court associate.

15. Throughout Ms. Webb's employment, Nicholas Cotten ("Cotten") held the position of Chief Deputy Clerk in the Fulton County Clerk's office, a supervisory and/or management role.

16. During Ms. Webb's employment, she was subject to Cotten's supervision and authority on employment matters.

17. Beginning in or about June of 2022 and continuing through in or about summer of 2023, Ms. Webb was subjected to inappropriate sexual comments, gestures, touching, and assault by Cotten. For example (not an all-inclusive list):

   a. Cotten sent Ms. Webb sexually explicit pictures and repeatedly requested she do the same;

   b. Cotten often physically touched and bumped into Ms. Webb at work;

   c. Cotten whispered vulgar and intimidating things to Ms. Webb at work, such as "don't act f*cking funny, I want to f*ck you";

   d. Cotten touched and groped Ms. Webb in his office;

   e. Cotten exposed his penis to Ms. Webb in his office and pleasured himself in front of her;

  f.  Cotten repeatedly requested sex and oral sex from Ms. Webb;

  g.  Cotten told Ms. Webb he had reserved a hotel room for the work Christmas party and requested her to stay with him; and

  h.  Cotten asked Ms. Webb if she was wearing any underwear, while putting his fingers inside her private (groin) area.

18. In one traumatic incident, Cotten sexually assaulted Ms. Webb in his office, pushing Ms. Webb over his desk and forcing intercourse with her, despite Ms. Webb telling him "no" and clearly not consenting.

19. Soon after Ms. Webb was sexually assaulted in the workplace by Cotten (described *supra*), Ms. Webb informed a member of Human Resources. Ms. Webb was essentially told she would need more evidence to do anything about it, because of Cotten's job position and stature. Ms. Webb was told by Human Resources that Cotten would make her look like an "angry black woman"; she was also told that there have been similar complaints from other female employees. No action was taken, and the sexual harassment continued.

20. On numerous occasions while the sexual harassment was ongoing (through in or about the summer of 2023), Ms. Webb denied Cotten's advances and opposed his sexual harassment, including but not limited to refusing to perform oral sex on him in his office and attempting to not let him touch her.

21. After Ms. Webb denied Cotten's advances, opposed his sexual harassment, and complained about his conduct to HR, her work environment became increasingly hostile and discriminatory in retaliation, for example (not an all-inclusive list):

    a. In or about spring of 2023, Ms. Webb was disciplined for not clocking in, despite similarly situated male counterparts not being disciplined for similar conduct or tardiness;

    b. Ms. Webb was frequently given pushback about needing time off for medical appointments, whereas other employees were not;

    c. In or about July of 2023, Cotten denied Ms. Webb's request to volunteer at a work-related community outreach event, despite her being among the first to RSVP;

    d. Documents Ms. Webb was working on were hidden or shredded, in an apparent attempt to make it seem Ms. Webb was not able to do her job; and

    e. In or about summer of 2023, Ms. Webb was transferred to a less-desirable work location approximately 30-45 minutes away, which lasted for approximately one month. The transfer made it difficult for Ms. Webb to pick up her children by the time her childcare provider

closed, resulting in her being assessed a late fee by the provider and almost losing her childcare.

22. Ms. Webb was subjected to retaliation and harassment by Cotten as well as other employees under Cotten's influence, including Deputy Clerk Brandy Robinson (who was herself engaged in a sexual relationship with Cotten, upon information and belief).

23. In or about August of 2023, Ms. Webb complained about Cotten's sexual harassment and retaliation directly to the Fulton County Clerk, Ché Alexander, the Director of Human Resources for the Fulton County Clerk, Antwan White, and the Chief Operating Officer for the Clerk's Office, Tim Ezell.  Ms. Webb told them she was being targeted by Cotten because of her denial of Cotten's requests for oral sex and for not letting him touch her.

24. On or about August 15, 2023, Ms. Webb complained about the sexual harassment, discrimination and retaliation she was experiencing from Defendants and Cotten in a Charge of Discrimination filed with the EEOC.  In a position statement to the EEOC in response to Ms. Webb's EEOC Charge, Defendants admitted Ms. Webb's allegations of sexual harassment against Cotten were made known to him ("The Clerk's Office also obtained Mr. Cotten's written statement in which he disputed the allegations").

25. After Ms. Webb complained directly to the Fulton County Clerk and filed an EEOC Charge, she continued to be subjected to retaliation, discrimination, and harassment (up through, and including, the present day).

26. Ms. Webb was told by Defendants (including a member of Defendant Fulton County's human resources department) that if she continued with her allegations, she would have to continue working at the less-desirable, distant work location. Although Ms. Webb was eventually no longer required to work at the distant work location, she was removed from working in the main administration office of Clerk Alexander. Through the date of this filing, Ms. Webb has not been restored to her previous work location and job duties (despite Cotten's resignation in recent months in connection with this action, described further *infra*).

27. Even though Ms. Webb and Cotten were ostensibly supposed to no longer be working in the same location following her complaints to Clerk Alexander and the EEOC, Cotten continued to intimidate and traumatize Ms. Webb by showing up at her work location (including the less-desirable, distant location) and walking near Ms. Webb for no apparent reason. Cotten also showed up at Ms. Webb's church and parked outside the daycare of Ms. Webb's children, watching the door and Ms. Webb's parked car.

28. In or about September of 2023, Defendants promoted three newly hired male employees to the position of senior court associate instead of Ms. Webb, bypassing

the normal job posting and application process to do so. Available job positions and promotions would typically be posted publicly for all employees to see and have the opportunity to apply. Instead, Cotten unilaterally announced that the three male employees had been promoted to senior court associate, to the surprise of the other employees and those promoted. Two of the male employees promoted, Chess F. and Christopher N., had only been employed approximately three months, were often late to work, and often smelled of marijuana; both these employees admitted they had not applied nor been interviewed for the promotion. The other male employee promoted, Twain R., previously a temp employee, had been a permanent employee for less than six months, was also often late to work, and would sleep at work. The three male employees had been hired in conjunction with Defendants ending the employment of three female employees. Ms. Webb could and should have been considered for the promotion of senior court associate instead of the promoted male employees: she trained them, had more experience than them, and had better job performance than them (including but not limited to being at work on time, not smelling of marijuana, and not sleeping at work). As a court associate, Ms. Webb held the same position that the three males were promoted from, and was in the pool of employees who would have been considered for the senior court associate promotion. Senior court associates were paid more than court associates.

29. In or about fall of 2023, Ms. Webb applied to a senior court associate position with Fulton County state court (in an attempt to get outside Cotten and Clerk Alexander's influence); upon information and belief, Clerk Alexander used her influence to prevent Ms. Webb from receiving the position. Ms. Webb was initially told she had advanced in the hiring process and would hear about the next step, however, Ms. Webb never received further communication about the position. Ms. Webb later learned that the director of the Fulton County state court was Clerk Alexander's cousin.

30. After Ms. Webb complained to Clerk Alexander and the EEOC, she was regularly required to take her lunch later than other employees, sometimes more than seven (7) hours into her workday, after starting at 8:30 am. Although Ms. Webb raised the issue with Clerk Alexander and requested that the lunch schedule be rotated among employees, no significant changes were made.

31. On or about June 19, 2024, shortly before the public filing of this lawsuit and after Defendants received notice of Ms. Webb's intent to file this lawsuit, Cotten resigned his employment. Upon information and belief, Defendants allowed Cotten to resign while maintaining his pension and other job benefits, and without accepting any responsibility for the heinous acts perpetrated on Defendants' female employees. Defendants knew about the allegations against Cotten for years and yet continued to employ him.

32. Based on the foregoing actions (and others), Ms. Webb believes and avers that Defendants unlawfully subjected her to sexual harassment, discriminated against her on the basis of her sex, and retaliated against her for opposing unlawful treatment.

## COUNT I

### Title VII (Discrimination on the Basis of Sex)
### [1] Hostile Work Environment [2] Discrimination [3] Retaliation

33. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

34. During Ms. Webb's employment, Defendants employed fifteen or more employees.

35. At all relevant times, Defendants were an "employer" under Title VII.

36. In doing the acts alleged herein, Defendants (by and through Cotten) subjected Ms. Webb to severe and pervasive sexual harassment.

37. The acts alleged herein were unwelcome, as well as subjectively and objectively offensive.

38. The sexual harassment was carried out by a high-ranking employee of Defendant, who was responsible for the supervision and management of other employees in the office (including Ms. Webb).

39. Ms. Webb opposed Cotten's sexual harassment, stated her opposition directly to him, and informed Defendants about the sexual harassment. In response, Ms. Webb continued to be intimidated and harassed.

40. Defendant failed to take proper remedial action and failed to protect Ms. Webb from continued harassment on the basis of her sex.

41. Ms. Webb experienced retaliation from Defendants' management and supervisors after complaining about and opposing the sexual harassment (described *supra*).

42. Defendants failed to properly train and educate their management and staff about sexual harassment and failed to promulgate, disseminate and/or enforce an adequate sexual harassment policy for Defendants' employees.

43. Defendants allowed and enabled sexual harassment and assault in the workplace by failing to properly address and remedy reports of sexual harassment and assault in the workplace by Ms. Webb and other female employees.

44. Ms. Webb was treated disparately on the basis of sex compared to her male counterparts, including being passed over for promotion (as described *supra*).

45. Ms. Webb suffered and continues to suffer severe emotional distress as a direct and proximate result of Defendants' sexual harassment, discrimination, and retaliation.

46. As a direct and/or proximate result of Defendants' violations of her rights, Ms. Webb has suffered serious injury and damages, and is entitled to compensable damages.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff Karen Webb respectfully requests that this Court enter judgment in her favor and grant her the following relief:

1. Order Defendants to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to back pay, front pay, salary/pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

2. Award Plaintiff pre-judgment and post-judgment interest;

3. Award Plaintiff damages for emotional distress, pain and suffering;

4. Award Plaintiff liquidated damages for Defendants' willful violations, to the extent available under applicable law;

5. To the extent applicable under law, order Defendants to pay punitive damages as appropriate to punish Defendants for their willful, deliberate, malicious, and outrageous conduct, and to deter Defendants or other employers from engaging in such misconduct in the future;

6. Award Plaintiff all reasonable costs and attorneys' fees incurred in connection with this action;

7. Award Plaintiff injunctive relief to prohibit unlawful conduct in the future;

8. Award Plaintiff such other and further equitable and legal relief as available and appropriate under the circumstances; and

9. Grant Plaintiff a trial of this matter by jury.

Date:  September 30, 2024

/s/A. J. Mitchell
A. J. Mitchell
Georgia Bar No.: 512269
*ATTORNEY FOR PLAINTIFF*
**Law Offices of A. J. Mitchell, LLC**
2388 Scenic Hwy S,
Snellville, GA 30078
Email: aj@ajmitchell-law.com
Phone: (770) 972-6623
Facsimile: (404) 592-6821

/s/Mark Tieman
Mark Tieman
*Admitted pro hac vice*
*ATTORNEY FOR PLAINTIFF*
California Bar No.: 344822
New Jersey Bar No.: 155692016
Email: MDTieman@gmail.com
Phone: (610) 207-8427

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send electronic notification of such filing to the counsel of record.

This 30th day of September, 2024.

/s/A.J. Mitchell
A. J. Mitchell
Georgia Bar No.: 512269
ATTORNEY FOR PLAINTIFF
Law Offices of A. J. Mitchell, LLC
2388 Scenic Hwy S,
Snellville, GA 30078
Email: aj@ajmitchell-law.com
Phone: (770) 972-6623
Fax: (404) 592-6821